Lynda LAIRD and Derrick Laird, Relators,

v.

The Honorable Jack R. KING, Respondent,

and

E–Z Mart Stores, Inc., Real Party in Interest.

No. 09–93–200 CV.

Court of Appeals of Texas, Beaumont.

Dec. 2, 1993.

Richard Clarkson, Reaud, Morgan & Quinn, Beaumont, for relator.

Russell Heald, Benckenstein, Norvell & Nathan, Beaumont, John Mercy, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for real party in interest.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

### OPINION

BROOKSHIRE, Justice.

Writ of mandamus proceeding.

A hearing was conducted on the Motion of E–Z Mart Stores, Inc., (E–Z) for the reduction of the supersedeas bond relative to the judgment entered below in this litigation. The real party in interest took the position that the motion to reduce was brought basically under Rule 47(b), section 1, of the Texas Rules of Appellate Procedure.

The record reflects that counsel for the real party in interest stated:

What we're asking the Court to do is to reduce the supersedeas bond or at the Court's discretion to eliminate the supersedeas bond requirements in this case because we think that we can put on evidence this morning through Ms. Hubbard that shows that the two criteria that are required by the rule can be met in this case

that do away with the necessity of supersedeas bonds in this case.

And basically what the rule requires that—it says that the Court can reduce the amount of the bond or do away with it if we can show that posting of the bond will cause irreparable harm to E–Z Mart in this case and that not posting the bond will do no substantial harm to Ms. Laird.

Counsel for E–Z stated that evidence would be forthcoming that had to do with the amount of equity that the real party in interest has in its Texas stores that is free of liens and upon which Ms. Laird's abstract of judgment liens have now attached. Counsel said the abstract of judgment liens has become matured and that Ms. Laird's judgment liens can be satisfied fully from an excess of value which is over and above the amount of Laird's judgment, including interest and costs.

Counsel then stated at the hearing below that E–Z in this case would have to post a bond in the approximate amount of $7.15 million to supersede the judgment if it was required to supersede the full amount. Counsel stated he intended to offer proof to show that E–Z cannot purchase that size bond and cannot collateralize any loan or any type of credit or line of credit which would allow E–Z to obtain a bond to supersede a $7.15 million judgment. Counsel then stated that basically his motion was the exact situation that the amendments to Rule 47 were meant to apply to after the famous case of *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

The chief financial officer of E–Z was put on the stand. She is a graduate in Business Administration and is a Certified Public Accountant. She stated that it was her understanding that the original judgment was somewhere in the neighborhood of $16 million but that by way of remittitur that the amount of bond that would be necessary to supersede the judgment would be a bond in the amount of $7,150,000.

She stated that on the Texas properties only that after all the prior indebtedness and prior liens had been paid there would be an equity remaining of $7 million to $11 million and that these figures were conservative. She considered only the real estate and no other assets of E–Z and she did not consider the equity values in the stores located in other states. Her figures of $7 million to $11 million allowed for a reduction because of depreciation. But it was her opinion that the fair market value of the stores upon sale would increase the equity therein to about $24 million because the depreciation factor would not play any significant part in the purchase price or the fair market value.

This witness stated unequivocally that the abstract of judgment liens of Ms. Laird had been filed against the Texas stores and that these liens had been filed in mid-to-late April 1993. She then testified that even after certain first liens had been paid off, there would still be a remaining equity between $7 million to $22 million available to satisfy Ms. Laird's judgment. The record reflects, according to her testimony, that she had had recent experience with obtaining and applying for large bonds. The supersedeas bonding process was explained and she stated that E–Z would have to go to a bank and get approval for a letter of credit. The letter of credit had to be supported by a certificate of deposit and that a certificate of deposit necessary to collateralize the bond would have to be in the amount of $7,150,000.

The thrust of her unequivocal testimony was that E–Z would have to actually put up the cash in the amount of the bond in order to get the bond. She stated that E–Z could simply not meet this requirement and that E–Z did not have $7.1 million in cash nor did E–Z have $7.1 million to obtain an adequate line of credit. She stated the properties could not be pledged as collateral because of the fact that the abstract of judgment liens had been filed by Ms. Laird against all of these Texas properties. She described these as "the Laird liens". The thrust of her testimony was that the bankers would not lend money unless E–Z came up with the cash which it simply didn't have in the amount of $7.15 million. Ms. Laird's abstract of judgment liens had been recorded in every county in Texas where E–Z had stores.

This financial officer was Ms. Hubbard and at the end of her testimony on direct, counsel for Laird had no questions and the counsel for E–Z stated that that was all the evidence he wished to proffer. The hearing to reduce the supersedeas bond was not lengthy and Ms. Hubbard's evidence was not challenged or impeached.

### The Jury's Finding and Verdict on the Trial on the Merits

In response to questions the jury found that the officers, agents, and/or the employees of E–Z Mart Stores, Inc., were negligent and that the negligence was a proximate cause of two certain occurrences that happened on or about August 10, 1990, and on or about August 21, 1990. The jury also found that the officers, agents, and/or employees of E–Z Mart Stores, Inc., were grossly negligent as to the occurrences of August 10 and August 21. For her injuries sustained on August 10, 1990, the jury awarded to Lynda Laird the sum of $1,000,000; but as to the August 21st occurrence, the jury awarded Lynda Laird $2,500,000.

In a separate question the jury awarded and assessed against E–Z Mart Stores, Inc., the sum of $13,000,000 which was awarded in favor of Lynda Laird as exemplary damages. The jury also found that the officers, agents, and/or employees of E–Z Mart Stores, Inc., acted with malice and that malice was a proximate cause of the injuries to Lynda Laird on August 10th and also on August 21st of 1990. These occurrences on the two dates were found by the jury to have been intentional, sexual assaults made on Laird.

An amended judgment awarded to Lynda Laird damages from and against E–Z Mart Stores, Inc., and Dennis Walker, jointly and severally, in the sum of $3,500,000 and it was further adjudged by the trial court that Lynda Laird do have and recover from E–Z Mart Stores, Inc., exemplary damages in the sum of $13,000,000—totaling $16,500,000 combining the compensatory and the exemplary damages. Later the able trial court rendered what was characterized as "the largest remittitur in Texas history for a single personal injury plaintiff". The remittitur reduced Lynda Laird's judgment to $5,000,000.

Thereafter, E–Z moved for a reduction of the supersedeas bond to no supersedeas bond at all or supersedeas bond limited to the amount of $1,000,000 although the judgment after remittitur still amounted to $5,000,000.

### E–Z Mart's Contentions

The briefest explanation of the paramount issue before us is that the real party in interest maintains that Texas Rule of Appellate Procedure 47(b)(1) governs and is exclusively and paramountly relevant and germane to the question of reducing the supersedeas bond. The real party in interest places major reliance on *Texaco, Inc. v. Pennzoil Co., supra.*

TEX.R.APP.P. 47(b)(1)(2) provides:

(b) **Money Judgment.** When the judgment awards recovery of a sum of money, *the amount of the bond or deposit shall be at least the amount of the judgment, interest, and costs.* The trial court may make an order to provide for security in an amount or type deviating from this general rule if after notice to all parties and a hearing the trial court finds:

(1) as to civil judgments rendered in a bond forfeiture proceeding, a personal injury or wrongful death action, a claim covered by liability insurance or a workers' compensation claim that posting the amount of the bond or deposit will cause irreparable harm to the judgment debtor, *and not posting such bond or deposit will cause no substantial harm to the judgment creditor.* In such a case, the trial court may stay enforcement of the judgment based upon an order which adequately protects the judgment creditor against any loss or damage occasioned by the appeal;

(2) as to civil judgments rendered other than in a bond forfeiture proceeding, a personal injury or wrongful death action, a claim covered by liability insurance or a workers' compensation claim, that posting the security at an amount of the judgment, interest, and costs would cause irreparable harm to the judgment debtor, and ordering

the security at a lesser amount would not substantially decrease the degree to which a judgment creditor's recovery under the judgment would be secured after the exhaustion of all appellate remedies. (emphasis added)

### *The Relators' Contentions*

Relators argue that the governing authority is the statute in the Texas Civil Practice and Remedies Code §§ 52.002, 52.005 (Vernon Supp.1993), and that the statutory enactment in the Civil Practice and Remedies Code supersedes Texas Rule of Appellate Procedure 47(b). As an alternative position, the Relators maintain that the reduction of the amount of the supersedeas bond was in violation of TEX.R.APP.P. 47(b)(1). Relators maintain that the real party in interest did not prove the necessary elements of reduction because the real party in interest failed to show that the reduction "will cause no substantial harm to the judgment creditor". *See* TEX.R.APP.P. 47(b)(1).

TEX.CIV.PRAC. & REM.CODE ANN. § 52.002 reads:

### § 52.002. Bond or Deposit for Money Judgment

A trial court rendering a judgment that awards recovery of a sum of money, *other than* a judgment rendered in a bond forfeiture proceeding, *a personal injury* or wrongful death action, a claim covered by liability insurance, or a workers' compensation claim, may set the security in an amount less than the amount of the judgment, interest, and costs if the trial court, after notice to all parties and a hearing, finds that:

(1) setting the security at an amount equal to the amount of the judgment, interest, and costs would cause irreparable harm to the judgment debtor; and

(2) *setting the security at the lesser amount would not substantially decrease the degree to which a judgment creditor's recovery under the judgment would be secured after the exhaustion of all appellate remedies.* (emphasis added)

Added by Acts 1989, 71st Leg., ch. 1178, § 1, eff. Sept. 1, 1989.

Also effective on September 1, 1989, was TEX.CIV.PRAC. & REM.CODE ANN. § 52.005:

### § 52.005 Conflict With Texas Rules of Appellate Procedure

(a) To the extent that this chapter conflicts with the Texas Rules of Appellate Procedure, *this chapter controls.*

(b) Notwithstanding Section 22.004, Government Code, *the supreme court may not adopt rules in conflict with this chapter.*

(c) The Texas Rules of Appellate Procedure apply to any proceeding, cause of action, or claim to which Section 52.002 does not apply. (emphasis added)

Acts 1989, 71st Leg., ch. 1178, § 1, eff. Sept. 1, 1989. Personal injury money judgments are exempted out of § 52.002; hence, the Texas Rules of Appellate Procedure do not apply because the appellate rules yield to the statutory enactments. The last amendment to Rule 47 by the Supreme Court was effective September 1, 1990.

We hold that sections 52.002 and 52.005 control. The Legislature clearly mandated that Chapter 52 controls over any conflict with the Texas Rules of Appellate Procedure, and further, that notwithstanding section 22.004 of the Government Code, the Supreme Court may not adopt rules in conflict with Chapter 52.

■ We hold that the plain and compelling language of 52.002 authorizes a trial court rendering a judgment that awards a recovery of money to set the security in an amount less than the amount of the judgment, interest and costs—but not in a judgment rendered in a bond forfeiture procedure, a personal injury case, or a wrongful death action, or a claim covered by liability insurance, or a worker's compensation claim. Query: What would be the logic or reason for authorizing a trial court to set security at less than the amount in a bond forfeiture case or a personal injury case or a claim that was actually covered by liability insurance? Or for that matter, a worker's compensation claim? Hence, we think the short answer to our problem is that the trial court cannot after rendering a judgment (that awards a recovery of money) set the security in an amount

less than the amount of the judgment, interest, and costs in a personal injury case, as here. The legislative diktat simply disallowed such empowerment to a trial court. And clearly, 52.005(a) dogmatically mandates that this Chapter 52 controls over the Texas Rules of Appellate Procedure and it also forbade the Supreme Court to adopt rules that are in conflict with Chapter 52. The *Texaco, Inc. v. Pennzoil Co., supra,* case did not involve personal injuries and was a gigantic lawsuit between large corporations over commercial and contractual matters.

### The Legislative History and Intent

TEX.CIV.PRAC. & REM.CODE ANN. §§ 52.002 and 52.005 were originally identical bills filed in the Texas House of Representatives and in the Texas Senate. An analysis of the bill demonstrates and clearly indicates that it was the committee's opinion that Senate Bill 134 by Senator Carl Parker of Port Arthur did not grant any additional rule-making authority to any State officer, institution or agency. And importantly, the bill analysis states that Section 52.005 provides that this chapter (Chapter 52) controls if any conflicts occur with the Texas Rules of Appellate Procedure and affirmatively and mandatorily prohibits the Supreme Court from adopting any rules in conflict with Chapter 52.

We also conclude that from the debate on the Senate Bill 134 it became clear that when Senator Carl Parker laid out his legislation he explained that Section 52.002 was specifically designed to protect and favor judgments in bond forfeiture cases, personal injury cases, wrongful death actions, claims covered by liability insurance, and worker's compensation claims. Thus the judgments in these classes of cases were not subject to a lowered supersedeas bond. Thus the supersedeas bond in amount must equal the judgment which is sought to be superseded plus interest and costs. The Senator explained in substance that the main thing that this legislation was getting at was the large, business-type, commercial disputes and business torts. He reasoned that Senate Bill 134 was not intended to have people who were injured, widows or what-have-you waiting forever with no security for their judgments.

### The Rationale of this Opinion

But we base our opinion on the clear language and wording of 52.002 and 52.005. Additionally, we point out that Justice Michol O'Connor of the First Court of Appeals in Houston has written on this very subject and she has stated clearly:

> A trial court has the discretion to permit a party to file a bond for less than the full amount of a money judgment (plus costs and one year's interest) if the judgment is not one that was rendered in a bond forfeiture proceeding, a personal injury or wrongful death suit, a claim covered by liability insurance, or a workers' compensation suit.

Justice O'Connor emphatically wrote that although TEX.R.APP.P. 47(b)(1) seems to attempt to permit a lower supersedeas bond in the enumerated kinds of suits, section 52.005 clearly states and mandates that to the extent Chapter 52 of the Remedies Code conflicts with the Rules of Appellate Procedure, then Chapter 52 controls, and even the Supreme Court may not adopt rules in conflict with Chapter 52. *See O'Connor's Texas Rules\*Civil Appeals,* Ch. 13, § 8 "Challenging the Bond" (1993).

We hold that the Legislative enactments prevail over TEX.R.APP.P. 47(b)(1) even if the Rule applies. But we hold Rule 47(b)(1) does not apply. In fact, Rule 47 limits its own application by its own language. Rule 47 has no efficacy when other laws apply. *See* TEX. R.APP.P. 47(a). We sanguinely hold that the legislative intent, both at the committee level and at the legislative level has been clearly and unmistakably expressed and set forth in Chapter 52 and that the legislature has mandatorily forbade the Supreme Court of Texas from in any manner modifying Chapter 52 and that the Texas Legislature was acting well within its powers and prerogatives.

■ We determine and hold that the learned and conscientious trial judge fell into error. Misapplication of legal principles and rules took place in that the real party in interest here *failed to carry its burden of proof* in the hearing of July 8, 1993, by failing to show that the bond reduction would and

will cause no substantial harm to the judgment creditor. *See* TEX.R.APP.P. 47(b)(1). We make this alternative determination while nevertheless reemphasizing that in our opinion, TEX.R.APP.P. 47, simply has no application in this original mandamus proceeding. In briefest summary, we hold that the clear and manifest legislative intent in the passing and promulgating of TEX.CIV.PRAC. & REM. CODE ANN. §§ 52.002 and 52.005 was to make certain that judgments rendered in personal injury cases required a full supersedeas bond equal to the amount of the judgment, plus interest, plus costs.

We are confident that Judge King will comply with this opinion and for that reason, we grant and issue the writ of mandamus conditionally.

Moreover, concerning the stay order entered by the able trial court, we determine that any stay order must be based upon a sufficient supersedeas bond in the amount of $7,150,000. This amount of $7,150,000 is realistic and necessary to protect the judgment creditor, Lynda Laird, against any loss or damage or detriment occasioned by the appeal or occurring during the appeal. The present stay order entered below utterly fails in this regard. And, of course, the present supersedeas bond is dramatically inadequate to protect Lynda Laird in relationship to the amount of the underlying, reduced and drastically "remittitured" judgment. Although E–Z pleaded that it simply did not have sufficient cash to either post a correct bond or to obtain a line of credit from banks or financial institutions to post a larger bond; nevertheless, we note that E–Z did not pledge any of its out-of-Texas properties or reserves; nor did it set aside any other assets that would adequately secure any damages occasioned by the appeal. And, of course, it seems glaringly clear that the filed, pending appeal from the trial on the merits will challenge, inter alia, the reduction of the original judgment amount. We have not yet heard oral argument.

Thus, we conditionally grant the writ of mandamus, confident that the learned trial judge will seasonably, but with all dispatch, require a supersedeas bond in the amount of at least $7.15 million. If no such appropriate, timely action is forthcoming, we will be constrained to issue the writ of mandamus consistent with this opinion.

WRIT CONDITIONALLY GRANTED.